702                                    67 Mass. App. Ct. 702 (2006)

Sheriff of Suffolk County *v.* AFSCME Council 93, Local 419.

SHERIFF OF SUFFOLK COUNTY *vs.* AFSCME COUNCIL 93, LOCAL 419.

No. 05-P-1583.

Suffolk. October 10, 2006. - November 7, 2006.

Present: KAFKER, GRAHAM, & KATZMANN, JJ.

*Arbitration,* Collective bargaining, Authority of arbitrator, Vacating award.

Discussion of the standards governing judicial review of an arbitrator's award. [705-706]

In an action brought pursuant to G. L. c. 150C, § 11, a Superior Court judge properly vacated an arbitrator's award, where the arbitrator went outside the collective bargaining agreement's express provisions to craft his award, thereby exceeding the authority granted to him by the parties. [706-707]

CIVIL ACTION commenced in the Superior Court Department on July 14, 2004.

The case was heard by *John C. Cratsley,* J.

*Jaime L. DiPaola* for the defendant.

*Ellen M. Caulo* for the plaintiff.

GRAHAM, J. Pursuant to a collective bargaining agreement between the sheriff of Suffolk County (sheriff) and AFSCME Council 93, Local 419 (union), correction officer Michael Doherty filed a grievance with his union, which then demanded arbitration regarding the manner in which the sheriff calculated Doherty's seniority date. An arbitrator upheld Doherty's charge that his seniority date had been calculated improperly and ordered the sheriff to upgrade his rank to sergeant, at the maximum step level.

The sheriff commenced an action to vacate the arbitrator's award, see G. L. c. 150C, § 11, on the ground that the arbitrator exceeded his authority. The sheriff contended that the arbitrator based his award not on an interpretation of the terms and conditions of the parties' collective bargaining agreement, as he was

required to do, but rather on language contained in a statute. A judge of the Superior Court agreed, and entered a judgment vacating the arbitrator's award. We affirm.

*Background.* This case arises out of a dispute between Doherty and the sheriff regarding Doherty's seniority when he returned to work as a correction officer after a hiatus of approximately twenty years. Doherty was hired as a correction officer at the Deer Island House of Correction by the Boston Penal Institutions Department in 1973.[1] He was injured in an altercation with an inmate in 1981, and was out on worker's compensation for two and one-half years. He then partially retired until 1985, when he was placed on full disability retirement. At the time he retired, Doherty held the civil service rank of temporary sergeant. His permanent civil service rank was that of correction officer.

Doherty returned to work on March 12, 2001, pursuant to G. L. c. 32, § 8(2).[2] That provision, passed after Doherty retired, allows an employee who retired due to disability to return to his prior (or similar) position if he becomes healthy enough to perform the essential duties of the job and such a position is vacant. Several months after he returned to work, Doherty came to believe that the sheriff improperly returned him to a lower job classification and pay scale than was warranted by his seniority. On July 16, 2001, Doherty, through a letter written by his attorney, claimed that the sheriff should reclassify him as a sergeant and place him at the top step of the pay scale, step 9. The sheriff denied Doherty's claim.[3] The union filed a grievance on Doherty's behalf claiming that by not advancing Doherty to a step 9, the sheriff violated his seniority rights

---

[1] In 1991, control of the Deer Island House of Correction was transferred from Boston Penal Institutions Department to the sheriff.

[2] General Laws c. 32, § 8(2), amended by St. 1998, c. 252, § 2, provides in relevant part: "If, after two years of the date that a member is retired under section 6 or 7 [of G. L. c. 32], the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member shall be returned to said position, provided the position is vacant."

[3] The sheriff did agree to advance Doherty to step 5 because he had fifty-two weeks of creditable service at step 4.

under art. XII, § 2, of the parties' collective bargaining agreement.[4]

The sheriff denied the grievance as being untimely pursuant to art. VII, § 2(A), of the collective bargaining agreement. That section provides that a grievance is waived unless it is submitted in writing within ten working days after "the employee or Union had knowledge or should have had knowledge of the occurrence or failure of occurrence of the incident on which the grievance is based." The grievance was subsequently submitted to arbitration solely on the issue of whether it was time barred. After a hearing, an arbitrator upheld the grievance as being timely and ruled that the case was arbitrable. Thereafter, the parties selected another arbitrator (hereinafter the arbitrator) to hear the merits of the grievance.

The parties were unable to agree upon a stipulated issue, so the arbitrator formulated the issue as follows: "What shall be the disposition on the grievance?" At the hearing, both parties presented evidence through witnesses and documents. The arbitrator determined that the parties had not anticipated the fact pattern presented in the grievance, and therefore, the matter was not addressed in the collective bargaining agreement. He concluded that since Doherty returned to work under the provisions of G. L. c. 32, § 8, its terms controlled the disposition of the grievance. Based on his reading of § 8(2)(*b*),[5] the arbitrator issued an award in Doherty's favor requiring the sheriff to upgrade Doherty to the rank of sergeant and set his seniority at step 9.

---

[4]Section 2 of art. XII reads as follows: "Seniority shall accumulate during absence because of illness, injury or industrial accident, educational leave, or layoff for less than twelve (12) consecutive months. Seniority shall be broken when an employee: A. terminates voluntarily, B. is discharged for just cause, C. exceeds an authorized leave of absence, or D. is laid off for a period of twelve (12) consecutive months."

[5]General Laws c. 32, § 8(2)(*b*), provides: "Upon return to work, [an employee] shall again become a member in service and regular deductions shall again be made from his regular compensation. Any creditable service in effect for him at the time of his retirement for disability shall thereupon be restored to full force and effect, and upon his subsequent retirement he shall be entitled to a normal yearly amount of retirement allowance computed as though such disability retirement and reinstatement had not taken place. No additional member contributions shall be required as a precondition of receiving such creditable service."

The sheriff filed a complaint in the Superior Court seeking to vacate the arbitrator's award, arguing that the arbitrator exceeded his authority by failing to issue an award that derived its essence from the collective bargaining agreement. The sheriff also contended that the arbitrator ignored the time limits for filing a grievance set forth in the parties' agreement. The judge found that the arbitrator exceeded his authority and vacated the award.[6] He concluded:

> "There is no justification in law for an arbitrator to determine a statutory right when the language of the [collective bargaining agreement] limits the power of an arbitrator to the interpretation of its express terms. Therefore, this Court holds that [the arbitrator] exceeded his authority when he granted relief under [G. L.] c. 32, § 8, and vacates his award in accordance with [G. L.] c. 150C, § 11(*a*)(3)."

The union filed a timely appeal from the judge's decision.

*Standard of review.* The role of the court in reviewing an arbitrator's award is limited. See *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). When parties agree to arbitrate a dispute, the arbitrator's decision is accorded great weight by our courts. See *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 228 (2001); *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003) ("Arbitration has long been viewed as a particularly appropriate and effective means to resolve labor disputes"). If the dispute concerns a collective bargaining agreement with an arbitration provision, the arbitrator's decision is subject to judicial review as provided in G. L. c. 150C. See *School Dist. of Beverly* v. *Geller*, 435 Mass. at 228.

"Unlike our review of factual findings and legal rulings made by a trial judge, we are bound by an arbitrator's findings and legal conclusions." *Ibid.* "The courts are not authorized to reconsider the merits of an award even though" it is wrong on the facts and the law, no matter if it is a wise or foolish decision.

---

[6]The judge did not address the issue of the timeliness of the grievance, concluding that that issue was moot in light of his decision to vacate the award.

*Ibid.*, quoting from *United Paperworkers Intl. Union* v. *Misco, Inc.*, 484 U.S. 29, 36 (1987). "Even a grossly erroneous decision is binding in the absence of fraud." *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp Authy.*, 363 Mass. 386, 390 (1973). "However, if, on review, the court finds that an arbitrator has exceeded his authority in fashioning an award, the court is required to vacate it. . . . The power and authority of an arbitrator is ordinarily derived entirely from a collective bargaining contract, and he violates his obligation to the parties if he substitutes his own brand of industrial justice for what has been agreed to by the parties in that contract. . . . [A]n arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement that he is confined to interpret and apply." *School Dist. of Beverly* v. *Geller*, 435 Mass. at 228 (quotations and citations omitted).

"Whether an arbitrator has acted beyond the scope of authority conveyed to him is always open to judicial review." *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 392 Mass. 407, 410-411 (1984), and cases cited therein. It is clear that an "arbitrator may not ignore the plain words of [a] contract." *Grobet File Co. of America, Inc.* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 134-135 (1988), citing *United Paperworkers Intl. Union* v. *Misco, Inc.*, 484 U.S. at 40-46. However, "[i]f there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes." *Id.* at 135.

*Analysis.* The parties' collective bargaining agreement contains several provisions limiting the grievance procedure and the arbitrator's authority. Specifically, art. VII provides that "[o]nly matters involving the question whether the Municipal Employer is complying with the express provisions of this Agreement shall constitute grievances under this Article," and that "[t]he arbitrator hereunder shall be without power to alter, amend, add to, or detract from the language of this Agreement."

The collective bargaining agreement's grievance procedure, as discussed above, gave the arbitrator no authority to construe statutory rights. Rather, it clearly and unambiguously limited grievances to "matters involving the question whether the Municipal Employer is complying with the express provisions

of this Agreement." Thus, the arbitrator only had authority to draw his award from the agreement's express provisions. As the arbitrator went outside the agreement to craft his award, he exceeded the authority granted to him by the parties. There was no error in vacating the award.

*Judgment affirmed.*