FALMOUTH POLICE SUPERIOR OFFICERS ASSOCIATION
& another[1] *vs.* TOWN OF FALMOUTH.

No. 10-P-1664.

Barnstable. September 8, 2011. - November 22, 2011.

Present: KANTROWITZ, GRAHAM, & FECTEAU, JJ.

*Arbitration,* Arbitrable question, Authority of arbitrator, Judicial review, Police. *Civil Service,* Applicability of provisions, Police. *Labor,* Arbitration, Civil service, Grievance procedure, Police. *Police,* Collective bargaining. *Public Employment,* Police, Termination. *Contract,* Arbitration.

A Superior Court judge correctly confirmed an arbitrator's decision concluding that a police officer's grievance regarding his termination was not subject to arbitration, where the collective bargaining agreement between the town and the union provided no basis to conclude that the parties intended to allow the grievance and arbitration provisions to be an alternative option for disciplinary actions against employees otherwise subject to G. L. c. 31, the civil service law, in that the lack of just cause language or election of remedies language in the agreement meant that importation of a just cause requirement would require the arbitrator to add language to the agreement that the parties had neither intended nor agreed to and thereby exceed the scope of the arbitrator's reference. [835-840]

CIVIL ACTION commenced in the Superior Court Department on February 19, 2009.

The case was heard by *Gary A. Nickerson,* J., on a motion for judgment on the pleadings.

*Andrew J. Gambaccini* for the plaintiffs.

*Tim D. Norris* for the defendant.

GRAHAM, J. After being demoted and terminated from his position as a sergeant in the Falmouth Police Department, plaintiff Paul Driscoll filed a grievance with his union, Falmouth Police Superior Officers Association (union), pursuant to a collective bargaining agreement (agreement) between the town of

---

[1]Paul Driscoll.

Falmouth (town) and the union. After pursuing the grievance process, the union demanded arbitration of Driscoll's claim. During the arbitration proceeding, the town raised as a threshold issue the arbitrability of Driscoll's claim, and the arbitrator concluded that the grievance was not subject to arbitration and thus declined to reach the merits of the claim.

The plaintiffs commenced an action to vacate the arbitrator's decision, see G. L. c. 150C, § 11, on the ground that the arbitrator exceeded the scope of his authority by ignoring the language of the agreement and violating the public policy favoring arbitration as a means to resolve labor disputes. A judge of the Superior Court affirmed the decision of the arbitrator. We affirm.

*Background.* Driscoll worked as a civil service employee for the Falmouth police department beginning in 1985, and in 1999 achieved the rank of sergeant. Driscoll's grievance arises out of a disciplinary process initiated in December, 2006, when the town issued a notice of contemplated discipline; an administrative hearing was convened on February 9, 2007, at the conclusion of which the hearing examiner closed the evidence. The town subsequently issued an amended notice to Driscoll that included additional charges, and a second hearing was convened. The hearing officer issued a report in August, 2007, concluding that five of the charges against Driscoll had been substantiated. Driscoll was demoted and discharged from his employment with the police department. At all relevant times, Driscoll was a member of the union and the relevant agreement was in effect.

Driscoll then filed a grievance pursuant to the procedures outlined in the agreement,[2] arguing that the town lacked just cause for the disciplinary action against him and that the hearing process suffered from procedural defects. The parties completed the grievance process, and in November, 2007, the plaintiffs requested arbitration of their claims. The parties selected an arbitrator and proceeded with arbitration, submitting to the arbitrator the following question: "Did the Town of Falmouth violate the applicable collective bargaining agreement by discharging Paul Driscoll from employment? If so, what shall be the remedy?" The town argued, as a threshold matter, that Driscoll's claim was not sub-

---

[2]Discussed *infra.*

ject to arbitration because it invoked the just cause provision of G. L. c. 31, rather than a separate term under the agreement, and that all prior disciplinary actions involving union members had been presented to the civil service commission (commission), rather than pursued through arbitration. The arbitrator deferred resolution of the issue of arbitrability and heard evidence on the merits of the claim. In an award issued January 16, 2009, the arbitrator concluded that Driscoll's claim was not arbitrable and declined to reach the merits of the claim.

The plaintiffs filed a complaint in Superior Court seeking to vacate the award. The judge denied the plaintiffs' motion for judgment on the pleadings and confirmed the arbitrator's award, concluding that the arbitrator did not exceed his authority or violate public policy. This appeal followed.

*Discussion.* The agreement in place between the union and the town establishes a multistep procedure for addressing grievances. The final step in the grievance procedure is to submit the dispute to arbitration by an arbitrator mutually agreeable to both parties or selected by the American Arbitration Association. Article 5.1B of the agreement defines a grievance as "any dispute alleged to be in violation of the terms of this Agreement." Article 5.2 confers on arbitrators "the authority to settle only grievances defined herein."

The town rests its argument against arbitrability on article 6.1 of the agreement, which provides: "The [town] and the [union] shall recognize and adhere to all provisions of the Massachusetts General Laws, Chapter 31, concerning Civil Service and particularly to the provisions relating to promotions, seniority, transfers, discharges, removal and suspensions." Chapter 31 governs civil service employment in the Commonwealth. Of particular relevance here, G. L. c. 31, § 41, added by St. 1978, c. 393, § 11, provides that no civil service employee shall be discharged or suspended "[e]xcept for just cause." Pursuant to G. L. c. 31, § 42, amended by St. 1981, c. 767, § 19, civil service employees seeking to challenge an employer's actions under the previous section may file a complaint with the commission, but the commission may not address issues that have already been resolved through arbitration: "In the event the commission determines that the subject matter of such complaint

has been previously resolved or litigated with respect to such employee, in accordance with the provisions of section eight of chapter one hundred and fifty E, or is presently being resolved in accordance with said section eight, the commission shall forthwith dismiss such complaint." General Laws c. 150E, § 8, amended by St. 1989, c. 341, § 80, in turn provides that public employees and employers "may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement."

The arbitrator based his determination that the grievance was not arbitrable on two considerations: (1) the agreement lacks any language limiting the town's ability to discipline or discharge union members independent of the provisions of G. L. c. 31 in article 6.1, and (2) the agreement "imposes a reciprocal obligation on the Union to 'adhere to all provisions' of Chapter 31," which provides a mechanism for challenging an employer's decision to demote or discharge an employee. Because, the arbitrator reasoned, the agreement lacks additional "language providing for an election of remedies allowing a [union] member claiming to be demoted or removed without just cause to proceed *either* through arbitration or before the [commission]" (emphasis in original), union members may only address their complaints to the commission and do not have the option of proceeding to arbitration. The arbitrator also noted that all prior challenges to disciplinary action have been pursued before the commission, rather than through arbitration. On review, the Superior Court judge concluded that the arbitrator did not exceed his authority or violate public policy.

It is axiomatic that the power of the court to review the decision of an arbitrator is extremely limited. See, e.g., *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 67 Mass. App. Ct. 702, 705 (2006). "Arbitration has long been viewed as a particularly appropriate and effective means to resolve labor disputes. . . . For this reason the Legislature has narrowly circumscribed the grounds to vacate arbitral awards." *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003). If the dispute concerns a collective bargaining agreement with an arbitration provision, the arbitrator's decision

is subject to judicial review only as provided in G. L. c. 150C. *School Dist. of Beverly* v. *Geller*, 435 Mass. 223, 228 (2001).

Courts "are bound by an arbitrator's findings and legal conclusions." *Ibid.* "Even a grossly erroneous decision is binding in the absence of fraud." *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390 (1973). The limited grounds on which a court may vacate an arbitral award are set forth in G. L. c. 150C, § 11, added by St. 1959, c. 546, § 1: "the superior court shall vacate an award if . . . the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by [S]tate or [F]ederal law." See *Duxbury* v. *Duxbury Permanent Firefighters Assn., Local 2167*, 50 Mass. App. Ct. 461, 464 (2000) (court "look[s] only to determine if the arbitrator here exceeded his scope of reference, acted against clearly defined public policy, or ordered conduct prohibited by State or Federal law"). "[I]f, on review, the court finds that an arbitrator has exceeded his authority in fashioning an award, the court is required to vacate it. . . . The power and authority of an arbitrator is ordinarily derived entirely from a collective bargaining contract, and he violates his obligation to the parties if he substitutes his own brand of industrial justice for what has been agreed to by the parties in that contract. . . . [A]n arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement that he is confined to interpret and apply." *School Dist. of Beverly* v. *Geller, supra* at 228-229 (quotations and citations omitted).

Where this case concerns the conclusion by an arbitrator that a certain grievance is not arbitrable, rather than a decision on the merits of a grievance, our analysis stands in somewhat different stead from the typical judicial review of an arbitral award.[3] In this instance, we are concerned with an arbitral decision that

---

[3]An arbitration award that offends public policy cannot be allowed to stand; courts, not arbitrators, resolve questions of public policy. See *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. 813, 818 (2005). A three-part analysis determines whether an arbitral award violates public policy. "First, the public policy must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Boston* v. *Boston Police Patrolmen's Assn.*, 74 Mass. App. Ct. 379, 381 (2009), quoting from *Sheriff of Suffolk County* v. *Jail*

conflicts with the broad public policy favoring the resolution of labor disputes through arbitration. See *Massachusetts Hy. Dept. v. American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995).

We begin by observing that questions of "substantive arbitrability," that is, whether a particular question falls within the scope of the agreement to arbitrate, are typically reserved for courts, not arbitrators. See *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 75 Mass. App. Ct. 340, 341 (2009); Walsh, A Judicial Guide to Labor & Employment Law § 19-3.32, at 442 (1990). Whether given parties have agreed to arbitrate a dispute is a matter of contract interpretation and, thus, is normally for the court to decide. See *United Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-583 (1960); *Local No. 1710, Intl. Assn. of Firefighters, AFL-CIO* v. *Chicopee*, 430 Mass. 417, 420-421 (1999) (*Local No. 1710*). See also *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 375-376 (2005) (questions of "procedural arbitrability," such as whether a grievance procedure has been followed, to be decided by arbitrator). Though the town reserved the right to contest the arbitrability of the issue throughout the grievance process, it did not seek to stay arbitration by judicial means.

To evaluate the arbitrability of a grievance under a collective bargaining agreement, we look to the principles governing arbitration articulated by the United States Supreme Court. See *Local No. 1710*, 430 Mass. at 420-421; *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 75 Mass. App. Ct. at 343. We are concerned here primarily with the principle that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

*Officers & Employees of Suffolk County*, 68 Mass. App. Ct. 903, 904 (2007), *S.C.*, 451 Mass. 698 (2008). "Second, the conduct involved cannot be 'disfavored conduct, in the abstract.' " *Ibid.*, quoting from *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 17 (1995). "Third, 'the arbitrator's award reinstating the employee [must violate] public policy to such an extent that the employee's conduct would have required dismissal.' " *Ibid.*, quoting from *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 605 (2000).

interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' "[4] *Local No. 1710, supra* at 421, quoting from *AT&T Technologies, Inc.* v. *Communications Wkrs.*, 475 U.S. 643, 650 (1986). "[T]he presumption is successfully rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the 'most forceful evidence' of a purpose to exclude the claim from arbitration." *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419, supra* at 343-344, quoting from *Paper, Allied-Industrial, Chem. & Energy Wkrs. Intl. Union Local 4-2001* v. *Exxon Mobil Ref. & Supply Co.*, 449 F.3d 616, 620 (5th Cir. 2006).

Under this agreement, the arbitrator has "the authority to settle only grievances defined herein," which consists of disputes "alleged to be in violation of the terms of this agreement." Since the agreement at issue here provides for arbitration only of grievances that state a "violation" of the "terms" of the agreement, the arbitrator was required to limit his review of the town's actions to obligations contained within the four corners of the agreement.

Ultimately, the arbitrator had to determine whether a mention of the parties' adherence to civil service law imported into the agreement a just cause requirement. Just cause is a significant employment protection that should not be lightly imposed unless the parties have bargained it into their agreement. The agreement here provides no basis to conclude that the parties intended to allow the grievance and arbitration provisions to be an alternative option for disciplinary actions against employees otherwise subject to G. L. c. 31. The arbitrator properly determined that the lack of just cause language or election of remedies language meant that importation of a just cause requirement would require him to add language to the agreement that the

---

[4]The other principles are "(1) 'a party cannot be forced to submit to arbitration [a] dispute which he has not agreed so to submit'; (2) whether an agreement presents a duty to arbitrate is a question to be resolved by a judge; (3) when determining whether the parties have agreed to submit a specific grievance to arbitration, a judge is not to rule on the merits of the grievance." *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 75 Mass. App. Ct. at 343, quoting from *Local No. 1710*, 430 Mass. at 421.

parties had neither intended nor agreed to and thereby exceed the scope of his reference.

We conclude that the arbitrator did not exceed his authority nor did his decision violate public policy. Accordingly, the judgment of the Superior Court confirming the arbitrator's award is affirmed.

*So ordered.*