465 Mass. 791 (2013) 791

Massachusetts Community College Council *v.* Massachusetts Board of Higher Education.

MASSACHUSETTS COMMUNITY COLLEGE COUNCIL *vs.*
MASSACHUSETTS BOARD OF HIGHER EDUCATION/ROXBURY
COMMUNITY COLLEGE.

Suffolk. March 5, 2013. - July 12, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Arbitration,* Confirmation of award, Collective bargaining. *Education,* Public colleges and universities. *Public Employment,* Collective bargaining. *Labor,* Arbitration, Collective bargaining, Public employment.

A Superior Court judge erred in confirming an arbitrator's award in favor of a college professor, who was a member of the plaintiff union, in which the arbitrator concluded that the actions of the defendant college in denying the professor tenure violated the terms of a collective bargaining agreement and ordered reinstatement of the professor as well as a new tenure evaluation process, where, based on the terms of the agreement, the college and the union did not agree to binding arbitration of any aspect of a tenure denial determination [794-798]; further, given that the award was nonbinding, the college was not obligated to apply under G. L. c. 150C, § 11, to vacate the award within thirty days of its receipt to avoid being bound by it, and the union was not entitled to have the award judicially confirmed and enforced pursuant to G. L. c. 150C, §§ 10 and 13 [798-800].

CIVIL ACTION commenced in the Superior Court Department on November 10, 2009.

The case was heard by *Kimberly S. Budd,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Will Evans* for the plaintiff.

*Carol Wolff Fallon* for the defendant.

*Deirdre Heatwole & Joseph Ambash,* for University of Massachusetts, amicus curiae, submitted a brief.

*James B. Cox,* Special Assistant Attorney General, *& Alison Little Sabatello,* for Bridgewater State University & others, amici curiae, submitted a brief.

BOTSFORD, J. The plaintiff, Massachusetts Community College

Council (union), and the defendant, Massachusetts Board of Higher Education/Roxbury Community College (college), were parties to a collective bargaining agreement (agreement) containing a provision that "[t]he granting or failure to grant tenure shall be arbitrable but any award is not binding." After a professor, who was a member of the union, was denied tenure at the college, the union submitted his grievance to arbitration. An arbitrator concluded that the college violated the terms of the agreement, and ordered as a remedy that the professor be reinstated to his position, and that he be eligible for a new evaluation and tenure review process. A judge in the Superior Court affirmed the arbitrator's award. The judge reasoned that the issue before the arbitrator was the manner in which the professor was reviewed and considered for tenure, not the substantive tenure decision itself, and that the arbitrator's decision was binding on the college. The college appealed, and the Appeals Court concluded that under the "clear language" of the above-quoted provision of the agreement, the arbitrator's award was not binding on the college, and therefore the judge erred in confirming the arbitrator's award under G. L. c. 150C, § 10. *Massachusetts Community College Council* v. *Massachusetts Bd. of Higher Educ./Roxbury Community College*, 81 Mass. App. Ct. 554, 562-563 (2012) (*Massachusetts Community College Council*). We also conclude that the Superior Court judgment must be reversed.

*Background.* On January 8, 2001, the college hired Virgilio Fernando Acevedo as an assistant professor, a tenure-track position, in the social science department. The terms of his employment were governed by the agreement, which covered full-time and part-time faculty and professional staff.[1]

In 2004, the college promoted Acevedo from assistant professor to associate professor. Acevedo's dean gave him an unsatisfactory evaluation for the fall 2005 semester that the college later rescinded and removed from his official personnel file in March, 2007. On October 6, 2006, as provided for in the agreement, the vice-president of academic affairs notified Acevedo of his eligibility for tenure consideration by the college's unit

---

[1]The agreement relevant to this case was in effect from June 1, 2006, to June 30, 2009.

personnel practices committee (tenure review committee). The tenure review committee ultimately voted to recommend a denial of tenure for Acevedo.[2] Again as provided in the agreement, the tenure review committee forwarded its recommendation to higher administrative authorities, including the president of the college, who recommended to the college's board of trustees that Acevedo be denied tenure; the board of trustees accepted the recommendation in May of 2007. As provided in the agreement when tenure is denied, Acevedo received a terminal, one-year contract extending from July 1, 2007, through June 30, 2008.

Acevedo grieved the decision to deny him tenure, alleging the college acted arbitrarily and capriciously in reaching its decision to deny tenure and issuing a one-year terminal contract. The grievance was not resolved in either of the first two steps of the agreement's grievance procedure, and the union thereafter filed a demand for arbitration with the American Arbitration Association on behalf of Acevedo. A mutually agreed upon arbitrator held hearings on three days in the spring of 2009.

The arbitrator considered two questions that the parties had agreed upon:

> "1. Did the [college] violate the Collective Bargaining Agreement by the manner in which the Grievant, Professor Virgilio Fernando Acevedo, was reviewed and considered for tenure, denied tenure, and/or given a terminal contract, which ended his employment effective May 31, 2008?
>
> "2. If so, what shall be the remedy?"

On July 30, 2009, the arbitrator issued her award. She concluded "the tenure process that led to [Acevedo's] receiving a terminal contract was seriously flawed," and ruled that the college's actions leading up to the denial of tenure and the issuance of a terminal contract violated the bargained-for terms of the agreement. As a remedy, the arbitrator ordered the college im-

---

[2] The majority of the unit personnel practices committee (tenure review committee) voted to recommend denying tenure to Acevedo on two separate occasions, voting before the college rescinded the dean's fall 2005 unsatisfactory performance evaluation on March 5, 2007, and then again after that evaluation had been removed from Acevedo's personnel file.

mediately to reinstate Acevedo to his position as an associate professor with full seniority, benefits, and back pay, and, thereafter, to form a new tenure review committee composed of completely new members and to conduct a new tenure evaluation process based solely on the criteria set forth in the agreement. The arbitrator stated that she would retain jurisdiction to resolve disputes between the parties concerning the remedial section of the award.

On November 10, 2009, the union filed a complaint in the Superior Court to confirm the arbitration award pursuant to G. L. c. 150C, § 10. The college filed a motion to dismiss the action, claiming that the court lacked subject matter jurisdiction because the arbitrator's award was a nonbinding award concerning the denial of tenure. A Superior Court judge denied the motion without prejudice. Thereafter, the college filed a motion for judgment on the pleadings. After a hearing, a different Superior Court judge (motion judge) denied the college's motion and allowed the union's motion to confirm the arbitration award.

*Discussion.* 1. *Arbitration of tenure review disputes under the agreement.* To frame our discussion we summarize the relevant provisions of the agreement, which are contained in arts. X, XI, and XIII.

Article X, entitled "Grievance Procedure," establishes a three-step grievance procedure for resolution of disputes under the agreement. Arbitration, which is step three, is the subject of art. 10.06. It provides, in art. 10.06(A)(1), that "[t]he decision or award of the arbitrator shall be final and binding for the [union], the employee and the [college] in accordance with applicable provisions of state law." Article 10.06(C), concerning the arbitrator's authority, provides in part: "Unless otherwise provided in this Agreement, the arbitrator shall have the authority to make a final and binding award on any dispute concerning the interpretation or application of this Agreement." As indicated at the outset, art. 10.06(F) provides: "The granting or failure to grant tenure shall be arbitrable but any award is not binding." It is followed by art. 10.06(G), providing that "in making a decision, the arbitrator shall apply the express provisions of this Agreement and shall not alter, amend, extend or revise any term or condition hereof."

465 Mass. 791 (2013)                                             795

Massachusetts Community College Council *v.* Massachusetts Board of Higher Education.

Article XI, entitled "Appointment and Reappointment — Tenure," focuses specifically on tenure in art. 11.03. Article 11.03(A) provides that tenure may be granted by the college on recommendation of the college's president, and art. 11.03(C) sets out procedures for tenure review. These include provision for the annual election of a tenure review committee by union members; the direction that tenure review committee members shall review "all relevant material within [the tenure candidate's] official personnel file and shall forward recommendations for either tenure or a one (1) year terminal appointment to the appropriate Dean[s]"; the dean's obligation to review the recommendations of the tenure review committee and the immediate supervisor and forward his or her own tenure recommendation to the president; the president's obligation to review the dean's recommendation and forward his or her recommendation to the college's board of trustees; and the direction that a recommendation for a one-year terminal contract, which is to follow from the president's recommendation of tenure denial, be accompanied by a statement of reasons.

The final relevant article is art. XIII, entitled "Evaluation." It first describes in art. 13.01 the objectives of evaluations, which include providing "a basis upon which decisions shall be made concerning the reappointment, promotion . . . tenure . . . and termination, dismissal and discipline of a unit member." Article 13.02 then sets out a series of specific criteria to govern faculty evaluations, which are to "be uniformly applied."

The college argues that under the plain terms of the agreement, the arbitrator's award in this case was nonbinding because art. 10.06(F) renders an award concerning the "failure to grant tenure . . . [to be] not binding." The Appeals Court agreed. *Massachusetts Community College Council*, 81 Mass. App. Ct. at 561-563. We approach the issue from a slightly different perspective. Under the agreement, it is up to the arbitrator to interpret its terms.[3] But whether a party has agreed to binding arbitration of a particular dispute is always a question for the court. See, e.g., *Commonwealth* v. *Philip Morris Inc.*, 448 Mass. 836, 843-844 (2007); *Local 1710, Int'l Ass'n of Fire Fighters AFL-CIO* v. *Chicopee*, 430 Mass. 417, 420-422 (1999)

---

[3]See art. 10.06(C) of the agreement, quoted in the text, *supra.*

(*Local 1710*), abrogated in part on other grounds by *Massachusetts Highway Dep't* v. *Perini Corp.*, 444 Mass. 366, 373 n.10, 376 n.11 (2005). See also *Falmouth Police Superior Officers Ass'n* v. *Falmouth*, 80 Mass. App. Ct. 833, 838 (2011) ("questions of 'substantive arbitrability,' that is, whether a particular question falls within the scope of the agreement to arbitrate, are typically reserved for courts, not arbitrators. . . . Whether given parties have agreed to arbitrate a dispute is a matter of contract interpretation and, thus, is normally for the court to decide" [citations omitted]).[4]

In this case, there is no question that in art. 10.06(F), the college agreed to nonbinding arbitration of disputes about tenure decisions. Rather, the core question raised is whether the college agreed to binding arbitration of any aspects of such tenure decisions, and more specifically, whether the dispute presented here for arbitration — did the college violate the agreement "by the manner in which [Acevedo] was reviewed and considered for tenure, denied tenure, and/or given a terminal contract[?]" — was one that the college (as well as the union) had agreed would be subject to binding and final resolution by an arbitrator.

Based on the terms of the agreement and art. X in particular, we answer the question "no." The dispute before the arbitrator was an express concern about the college's "failure to grant tenure" to Acevedo.[5] Accordingly, as the college contends, the

---

[4]In each of the cases cited in the text, *supra*, the court discussed whether the parties had agreed to arbitrate a particular dispute without making any express distinction between binding and nonbinding arbitration. However, it is clear that the arbitration procedure involved in each case was a binding one. See *Commonwealth* v. *Philip Morris Inc.*, 448 Mass. 836, 841 (2007); *Local 1710, Int'l Ass'n of Fire Fighters AFL-CIO* v. *Chicopee*, 430 Mass. 417, 418-419 (1999) (*Local 1710*); *Falmouth Police Superior Officers Ass'n* v. *Falmouth*, 80 Mass. App. Ct. 833, 836-837 (2011) (*Falmouth*). That binding arbitration was the issue makes sense, of course, given that one of the most significant hallmarks of binding arbitration is the exceptionally limited nature of judicial review available. See *Falmouth*, 80 Mass. App. Ct. at 836-837, and cases cited. See *School Comm. of Boston* v. *Boston Teachers Union, Local 66, AFL-CIO*, 378 Mass. 65, 69 (1979). Accordingly, the question whether a party has agreed to binding arbitration of a particular dispute is critical.

[5]Acevedo's grievance stated that "[t]he college acted arbitrarily *by denying me tenure* and issuing a one year terminal contract" (emphasis added). In substance, that was the issue presented for arbitration, and that is what the arbitrator decided: "[t]he [college] violated the [agreement] by the manner in

465 Mass. 791 (2013)                                                797

Massachusetts Community College Council *v.* Massachusetts Board of Higher Education.

dispute between the parties could be the subject of arbitration, but not one of binding arbitration.

The union challenges this view, arguing, as the motion judge concluded, that the arbitrator's award was binding on the parties because it did not tread on the substantive — and concededly out-of-bounds — issue whether Acevedo should be granted or denied tenure, but only concerned the procedures employed by the college in reviewing Acevedo's tenure application. As the union and the motion judge point out, our cases have established the principle that, while the decision whether a particular teacher is entitled to tenure at a public educational institution is a nondelegable responsibility of those ultimately responsible for the management of the institution — whether a school committee or the trustees of a public college — the institution's managers may still bind themselves to follow a set of defined procedures in making tenure or other types of nondelegable decisions, and those procedures "may be the basis for an arbitrable grievance." *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers Ass'n/Mass. Community College Council*, 423 Mass. 23, 27-28 (1996). See *Massachusetts Bd. of Higher Educ./Holyoke Community College* v. *Massachusetts Teachers Ass'n/Mass. Community College/National Educ. Ass'n*, 79 Mass. App. Ct. 27, 32-34 (2011). See also, e.g., *School Comm. of Holbrook* v. *Holbrook Educ. Ass'n*, 395 Mass. 651, 655 (1985); *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n*, 372 Mass. 121, 124-125 (1977); *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113-114 (1977). But this general principle has no bearing on this case; the agreement's terms render it inapplicable. The agreement certainly prescribes a set of procedures to govern tenure review in art. 11.03 and, to a lesser extent, art. XIII. But in art. 10.06(F), the agreement expressly and specifically circumscribes the scope of arbitration that is permitted for disputes about tenure review: "[t]he granting or failure to grant tenure shall be arbitrable but any award is not binding." A reading of art. 10.06(F) as incorporating a distinction between substance and procedure —

which [Acevedo] was reviewed and considered for tenure, *denied tenure* and given a terminal contract" (emphasis added).

as only applying to the ultimate decision whether to grant or deny tenure, and not the tenure review process as well[6] — fails to respect the comprehensive scope of the agreement's phrase, "[t]he granting or failure to grant tenure," and creates a dichotomy that the phrase simply does not support.[7] That the parties and arbitrator in this case framed the dispute as concerned with "the *manner* in which" Acevedo was "denied tenure" does not change the fact that at bottom, the denial of — or in the words of art. 10.06(F), the "failure to grant" — tenure was the issue (emphasis added).

In sum, the terms of the agreement persuade us that the college and the union did not agree to binding arbitration of any aspect of a tenure denial determination, and therefore did not agree to binding arbitration of the Acevedo grievance.[8,9]

2. *Judicial review of the award under G. L. c. 150C.* The union takes the position that we should not consider any aspect

[6]The union argues for an even more refined construction, asserting that art. 10.06(F) is designed to allow "a grievant to submit to nonbinding arbitration the question of whether the [c]ollege should have granted tenure (or possibly denied tenure to another) based on a comparison between the grievant's personnel record and the records of faculty who were granted tenure." As the Appeals Court noted, see *Massachusetts Community College Council* v. *Massachusetts Bd. of Higher Educ.*, 81 Mass. App. Ct. 554, 562 n.17 (2012), the union offers no record or other support for this interpretation, and we have found none.

[7]We note that the arbitrator did not differentiate between the procedure and substance associated with the tenure review process in her award.

[8]Our conclusion is not inconsistent with the arbitrator's award. Although the college indicated at the start of the arbitration its position that any award in this case would not be binding, the college was willing to proceed with the arbitration, as indeed it was obligated to do under art. 10.06(F). Whether the result of such an arbitration is to be binding or nonbinding is a separate question, one that an arbitrator need not necessarily address and, in this case, did not: the arbitrator's award nowhere references art. 10.06(F) or the issue of binding versus nonbinding awards.

[9]Because we decide that the arbitrator's award was nonbinding, we need not reach the college's argument that the award intruded on the nondelegable authority and responsibility that the college's administrators and trustees hold with respect to tenure decisions. See G. L. c. 15A, § 22 (*c*). See also *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers Ass'n/Mass. Community College Council*, 423 Mass. 23, 29-30 (1996); *Massachusetts Bd. of Higher Educ./Holyoke Community College* v. *Massachusetts Teachers Ass'n/Mass. Community College/National Educ. Ass'n*, 79 Mass. App. Ct. 27, 32-34 (2011).

465 Mass. 791 (2013) 799

Massachusetts Community College Council *v.* Massachusetts Board of Higher Education.

of the merits in this case, because the college failed to challenge the arbitrator's award by initiating an action under G. L. c. 150C, § 11, within the thirty-day time frame prescribed by § 11 (*b*)[10] for doing so, and therefore, allowance of the union's motion to confirm the award was required as matter of law under G. L. c. 150C, § 10.[11]

We disagree. Collective bargaining agreements for public employees, including the agreement here, are authorized and governed by G. L. c. 150E. Pursuant to G. L. c. 150E, § 8, public employers and employees are authorized to include in a collective bargaining agreement a grievance procedure "culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of [the collective bargaining] agreement." This same section further provides that "binding arbitration hereunder shall be enforceable under the provisions of [G. L. c. 150C]." Reading G. L. c. 150E, § 8, and G. L. c. 150C, §§ 10 and 11, together, we understand the provisions of §§ 10 and 11 to become relevant and available to a public employer or union only with respect to a binding arbitration award. Indeed, the plain import of the words used in §§ 10 and 11 leads to the same conclusion: it makes no sense for the Superior Court to be asked to "confirm an award" (G. L. c. 150C, § 10) or, alternatively, to "vacate an award" (G. L. c. 150C, § 11) that the parties have agreed is not binding on them. See *Perry* v. *Commonwealth*, 438 Mass. 282, 285 (2002) (reading statutory language in "commonsense manner"); *Acme Laundry Co.* v. *Secretary of Envtl. Affairs*, 410 Mass. 760, 777 (1991) (same); *Kramer* v. *Zoning Bd. of Appeals of Somerville*, 65 Mass. App. Ct. 186, 191-192 (2005) (same). Accordingly, we agree with the Appeals Court that because the arbitrator's award was a nonbinding one, the college was not obligated to apply under G. L. c. 150C, § 11, to

---

[10]General Laws c. 150C, § 11 (*b*), provides in relevant part: "An application [to vacate an arbitration award] under this section shall be made within thirty days after delivery of a copy of the award to the applicant . . . ."

[11]Section 10 of G. L. c. 150C provides: "Upon application of a party, the superior court shall confirm an award, unless within the time limits, hereinafter imposed grounds are urged for vacating, modifying or correcting the award, in which case the court shall proceed as provided in [G. L. c. 150C, §§ 11 and 12]."

vacate the award within thirty days of its receipt to avoid being bound by it, and concomitantly, the union was not entitled to have the award judicially confirmed and enforced pursuant to c. 150C, §§ 10 and 13.[12] See *Massachusetts Community College Council*, 81 Mass. App. Ct. at 559 nn.12 & 13, 563.

*Conclusion.* We reverse the judgment of the Superior Court confirming the arbitration award, and remand the case to the Superior Court for entry of a judgment of dismissal.

*So ordered.*

---

[12]General Laws c. 150C, § 13, provides in part: "Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and shall be enforced as any other judgment or decree."